UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHARA FERRIS, individually, | ) | |
| and as mother and next of [sic] | ) | |
| friend to Olivia Ferris, | ) | |
| | ) | |
| Plaintiffs [sic],[1] | ) | CIVIL ACTION NO. |
| | ) | 18-10204-DPW |
| v. | ) | |
| | ) | |
| DONNA DARRELL and | ) | |
| POUND HOUNDS Res-Q, and | ) | |
| ANIMAL CARE CENTERS OF | ) | |
| NEW YORK CITY, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER
July 31, 2020

In this diversity case, a Massachusetts resident, Shara
Ferris, tenaciously seeks to pursue claims jointly against three
New York defendants only in this court, where I have concluded
that personal jurisdiction against at least one Defendant is
lacking.  Despite the passage of time to reconsider her adamant
position, she evidences no willingness to seek or accept either
transfer of the entire case, or severance of a party as to which
jurisdiction is lacking.  In the face of this unwillingness to
pursue the obvious alternative venue, I will, in the interests

---

[1] The identification of multiple "Plaintiffs" in this caption is
copied verbatim directly from "Plaintiff's 2nd Amended
Complaint" which I treat as the operative pleading before me.
*See infra* note 3.  Since Shara Ferris is a single person who
appears in two separate capacities, I refer to her as the
singular "Plaintiff" in the body of this Memorandum and Order,
as the actual title used by Plaintiff to denominate her Second
Amended Complaint does.

of justice, transfer the case in its entirety, thereby avoiding the statute of limitations issues that dismissal might create for Ms. Ferris's continued pursuit of this litigation through new complaints after dismissal.

Ms. Ferris proceeds individually and as next friend to her daughter, Olivia.  The three New York defendants are Pound Hounds Res-Q ("Pound Hounds"); the executive director of Pound Hounds, Donna Darrell; and Animal Care Centers of New York City ("ACCNYC").  Ms. Ferris alleges that Pound Hounds and Ms. Darrell violated the Massachusetts dog bite statute and acted negligently in matching a dangerous dog with Ms. Ferris's family.  She additionally alleges that Pound Hounds breached its foster agreement with respect to the dog and that Ms. Darrell committed defamation by referring to Ms. Ferris as a "con artist."  As to ACCNYC, Ms. Ferris asserts claims of violation of the Massachusetts dog bite statute, negligence, and breach of contract.

The parties have engaged in fragmented motion practice and discovery.  Now pending before me is a collection of those motions.  I will deal in this Memorandum directly with foundational matters of jurisdiction and indirectly with the substance of the claims.  Those matters are presented in various of the motions, including: a motion to dismiss for lack of personal jurisdiction or, in the alternative, transfer, by

ACCNYC [Dkt. No. 22]; a second motion to amend the complaint by Ms. Ferris, [Dkt. No. 25]; a motion to dismiss for lack of personal jurisdiction by Pound Hounds and Ms. Darrell, [Dkt. No. 32]; a motion for partial summary judgment by Ms. Ferris, [Dkt. No. 39]; and an opposition to Ms. Ferris's partial summary judgment motion, which contains a cross motion for summary judgment by Pound Hounds and Ms. Darrell, [Dkt. No. 47].[2]

For the reasons stated below, after allowing Ms. Ferris's motion to amend the complaint, I will grant ACCNYC's motion to dismiss or transfer to the extent of directing the Clerk to transfer the entire case to the United States District Court for the Southern District of New York for adjudication.  In the interest of providing the New York transferee judge with a clean slate on which to set out an appropriate scheduling order in that Court, I will deny the remaining motions without prejudice to reformulation before the presiding judge in the Southern District who will be in a position to exercise personal jurisdiction over all Defendants Ms. Ferris seems determined to pursue in a single proceeding, albeit at the present time in the wrong venue.

---

[2] Also pending are a motion to compel production of documents from ACCNYC by Ms. Ferris, [Dkt. No. 50]; a motion for a status conference by Pound Hounds and Ms. Darrell, [Dkt. No. 59], and a motion to compel the deposition of Plaintiff by Pound Hounds and Ms. Darrel [Dkt. No. 71].

## I. BACKGROUND

As alleged in the proposed Second Amended Complaint[3] ["SAC"], the pleadings show the following:

### A.   *The Parties*

Plaintiff **Shara Ferris** and Plaintiff's daughter **Olivia Ferris** are residents of Gloucester, Massachusetts. [SAC at ¶¶ 1 & 2].[4]

Defendant **Donna Darrell** is the executive director of Pound Hounds and resides within the state of New York, [*id.* at ¶ 3], apparently in New York County and thus within the area constituting the Southern District of New York.   28 U.S.C. § 112(b).[5]

---

[3] As I have indicated, I will grant Plaintiff's second motion to amend her complaint [Dkt. No. 25].  For the purposes of deciding the motions pending before me, I rely on Plaintiff's Second Amended Complaint, ("SAC") [Dkt. No. 26-1].  In that connection, in ruling on ACCYNYC's motion to dismiss, I take the allegations from the SAC, which was filed after Ms. Ferris had an opportunity to conduct discovery to develop her allegations, as the core of the *prima facie* record relied upon for determining personal jurisdiction.

[4] The characterization of Shara Ferris as "next of friend to" her daughter in the caption to the SAC, which is used verbatim as the caption for this Memorandum and Order, appears to have been the result of a typographical error that eluded correction in proof reading of the successive iterations of the complaint. That error, however, is not evident in ¶ 2 of the successive complaints.

[5] In order to assure myself that the inattentiveness of Plaintiff's counsel to jurisdictional and other details has not resulted in an improvident failure to challenge the asserted principal place of business or residence in New York County of the several Defendants during all relevant times, I have cross checked third party internet sources, which, while not formally the subject of judicial notice, appear reliable enough to

Defendant **Pound Hounds** is an animal rescue and adoption facility doing business in New York City, New York. [*Id.* at ¶ 4]. In the absence of further particularization in the pleadings, I take judicial notice that a New York City address designates New York County, a location within the area constituting the Southern District of New York. *See supra* note 5.

Defendant Animal Care Centers of New York City, **ACCNYC,** is an animal rescue and adoption facility doing business in New York City, New York [*id.* at ¶ 5] and thus within the area constituting the Southern District of New York. *See supra* note 5.[6]

B.   *Factual Background*

1.   The Dog, Brock, is surrendered to ACCNYC

In October 2015, the New York Police Department picked up the dog, "Brock," a stray pit bull mix, in Brooklyn, New York, and surrendered him to ACCNYC. [SAC at ¶¶ 8-12]. After

---

provide assurance against inadvertent waiver or forfeiture of a colorable objection by Plaintiff. Westlaw databases containing public records of people and business entities, respectively, confirm that Defendants maintain resident or business addresses, as applicable, in New York County and have done so throughout all times pertinent to this litigation. *See generally* WESTLAW People Finder and WESTLAW Business Profile, accessed through WESTLAW Public Records searches.

[6] I note further that Plaintiff does not dispute ACCNYC's assertion that it is not authorized to do business outside of the state of New York. *See* Affidavit of Jennifer Piibe, filed as Exhibit C to ACCNYC's Memorandum in support of its motion to dismiss or transfer. [Dkt. No. 23-3 at ¶¶ 1, 7].

conducting medical and behavioral assessments of Brock, ACCNYC diagnosed Brock with "Kennel Cough," and gave him a rating of "average," meaning he was "safe" as a family pet and "safe" around children. [*Id.* at ¶¶ 13-17].

Because of Brock's medical condition, ACCNYC placed him on its website's euthanasia list. [*Id.* at ¶ 20]. At least two unaffiliated Facebook groups, including one called "Must Love Dogs," took the information provided about Brock from ACCNYC's website and advertised him on their own Facebook pages as a dog that needed to be saved from euthanasia. [*Id.* at ¶ 21].

### 2.  Ms. Ferris applies to foster Brock

Ms. Ferris saw the advertisement on the Facebook page of "Must Love Dogs," and she reached out to the administrators of that group to express her interest in fostering one of the dogs set to be euthanized.[7]  [*Id.* at ¶ 23]. The administrators then forwarded information regarding Ms. Ferris to Pound Hounds and Ms. Darrell. [*Id.* at ¶ 24].  In turn, Ms. Darrell notified ACCNYC that she wanted to "pull" Brock from the euthanasia list and legally adopt him.  ACCNYC then pulled Brock from the euthanasia list. [*Id.* at ¶¶ 25-26].

There is no apparent connection between "Must Love Dogs"

---

[7] According to the Application Ms. Ferris ultimately submitted, a dog named "Queen" was her first choice, and Brock was her second choice.  [Ferris Application for Dog Foster (the "Foster Application") at DARRELL_000130, filed as Exh. B to SAC].

and ACCNYC; however, I observe that the Facebook page for "Must Love Dogs" includes step-by-step instructions explaining how to save a dog.  These directions contain a link to ACCNYC's "At-Risk Animals" page (Step 1) and a notice that payment to ACCNYC will be required (Step 7).[8]

Thereafter, Ms. Darrell, on October 24, 2015, signed a New Hope Adoption Agreement between Pound Hounds and ACCNYC.  [SAC at ¶ 28; New Hope Adoption Agreement, the "Adoption Agreement," filed as Exh. A to SAC].  The Adoption Agreement contains a choice of law provision stipulating that the "agreement shall be governed by the laws of the State of New York."  [Adoption Agreement at Bullet Point 6].

Once Pound Hounds signed Brock's Adoption Agreement with ACCNYC, Ms. Ferris filled out and e-signed a Foster Application through Pound Hound's website. [SAC at ¶ 30; Ferris Application for Dog Foster, (the "Foster Application") at DARRELL_000130, filed as Exh. B to SAC]. She stated in the Foster Application that she had three minor children under the age of eight[9] and another dog and cat living in her apartment.  [Foster Agreement at DARRELL_000131, 000133].  She also stated that she had a yard

---

[8] https://www.facebook.com/mldsavingnycdogs/ (last visited July 29, 2020).
[9] The SAC alleges that there were "3 minor children under the age of seven . . ." at ¶ 35; however, the application itself actually indicates the children's ages were 7, 6, and 4 years old.  [Foster Agreement at DARRELL_000130].

without a fence, that she had fostered more than 25 dogs, that she had experience handling a pitbull or other large breed dog, and that she would do "whatever it takes I do not give up" in response to a question about what she would do if the new dog did not get along with the dog she had. [*Id.* at DARRELL_000132, 000134]. Pound Hounds did not conduct an in-person home visit and evaluation, although that was its usual practice. [SAC at ¶ 37].

During the application process, Pound Hounds staff inquired of Ms. Ferris about an allegation that she started a fraudulent "Go-Fund-Me" page to raise money to pay veterinary bills for her dog. In response to the staff inquiry, Ms. Ferris provided Pound Hounds with the relevant veterinary records and denied involvement with the purported scam. Pound Hounds thereafter continued with the application process. [*Id.* at ¶¶ 39-44].

Ultimately, Pound Hounds emailed a series of documents to Ms. Ferris, including an unexecuted foster agreement contract. [*Id.* at ¶ 46]. The documentary record material before me does not indicate whether the foster agreement contract had ever been signed.[10] [*Id.* at ¶ 47; *see also* Foster Contract, Exh. C to Plaintiff's Initial Disclosures, Dkt No. 23-2 at 42-43].

---

[10] I note, however, that some of the allegations in the SAC cite to provisions of the seemingly unexecuted Foster Contract between Ms. Ferris and Pound Hounds as though Pound Hounds was bound by these terms. Although beyond the scope of the instant motion(s), I note it is inconsistent to rely on some of the

3.    Brock Attacks Olivia Ferris

Pound Hounds and ACCNYC arranged to have an independent[11]
entity known as "Mayor's Alliance" drive Brock from ACCNYC, in
New York City, to a pre-determined pick up location in
Arlington, Massachusetts. [*Id.* at ¶ 51].  Ms. Ferris
communicated directly with Mayor's Alliance to coordinate the
details. [Mayor's Alliance – Ferris Emails, Exh. E to
Plaintiff's Initial Disclosures, Dkt No. 23-2 at 48-49].  ACCNYC
contends, and Plaintiff does not dispute, that it does not
transport dogs out of state itself; rather, if an adoption
application is approved for one of its animals, that animal
generally must be picked up from the shelter. [ACCNYC Memorandum
in support of motion to dismiss or transfer at 1, Dkt No. 23].

On or about October 23, 2015, Ms. Ferris picked Brock up
at the pre-determined Arlington location to take him home to
Gloucester.  [*Id.* at ¶ 51-52].  After transporting Brock in a
crate and taking him on a short walk (on a leash), Ms. Ferris
brought Brock to her home and unhooked his leash from his

---

terms of an unexecuted agreement, while ignoring other, less
convenient provisions.  In her opposition to the pending motions
to dismiss, Ms. Ferris merely maintains that she and Pound
Hounds "entered into an agreement for the foster care of a dog."
Ferris Opposition to Motions to Dismiss at ¶ 8 [Dkt No. 24].
[11] I note that Plaintiff does not dispute that Mayor's Alliance
does not conduct transports on behalf of ACCNYC, as stated in
the deposition of Ms. Jessica Vaccaro, Corporate Representative
for ACCNYC.  *See* Exh. C to ACCNYC's Memorandum of Law in further
support of its Motion to Dismiss.  [Dkt. No. 35-3 at Dep. Trans.
Pages 60-62].

collar.  [*Id.* at ¶¶ 53-56].  Brock "got loose and immediately attacked" Ms. Ferris's then-four-year-old daughter, Olivia. Brock "clamped onto" Olivia's right arm for over a minute, "creating a crush-type injury and leaving nine permanent scars going from her upper arm and chest down to her lower arm and wrist." [*Id.* at ¶¶ 56-57; *see also* Photos of Bite, Exh. A to Plaintiff's Initial Disclosures, Dkt No. 23-2 at 6-33].  Ms. Ferris managed to get Brock away from Olivia and put him back in the crate.  [*Id.* at ¶ 58].  She then called animal control. [*Id.*].  Ms. Ferris took Olivia to the emergency room while animal control quarantined Brock.  [*Id.* at ¶¶ 59-60].

Ms. Ferris sent a notice of claim to Pound Hounds on or about December 28, 2015. [*Id.* at ¶ 61].  This communication was not met with any response.  [*Id.*].  In July 2017, Ms. Ferris sent a settlement demand package to Pound Hounds.  [*Id.* at ¶ 62].  Pound Hounds responded, but denied liability completely. [*Id.*].  With respect to both communications, Pound Hounds refused to forward Ms. Ferris's letters to its insurer.  [*Id.* at ¶ 63].

That same month, Ms. Darrell, as executive director of Pound Hounds, sent a letter to Ms. Ferris's counsel, stating that Pound Hounds has been "advised by members of the public that Ms. Ferris is a suspected scam artist in her community" and she is "accused of starting fraudulent gofundme pages as well as

'flipping' dogs for profit." [*Id.* at ¶ 64; *see also* July 17,
2017 Letter, filed as Exh. D to Plaintiff's Initial Disclosures,
Dkt No. 23-2 at 45-46].

## C.   *Procedural Background*

On February 2, 2018, Ms. Ferris filed suit in this court
against Pound Hounds and Ms. Darrell.  In her original
complaint, Ms. Ferris raised claims for violation of the
Massachusetts dog bite statute (Mass. Gen. Laws. c. 140, § 155) and
for negligence against Pound Hounds and Ms. Darrell, a claim of
breach of contract against Pound Hounds, and a claim of
defamation against Ms. Darrell.

Over six months later, on July 24, 2018, Ms. Ferris
submitted an amended complaint, adding ACCNYC as a defendant.
The basic factual allegations and claims against Pound Hounds
and Ms. Darrell in this first amended complaint remained the
same as those in the original complaint.  As to the new
defendant, ACCNYC, Ms. Ferris asserted claims of violation of
Massachusetts dog bite statute, negligence, and breach of
contract.

Pound Hounds and Ms. Darrell filed an answer on September
4, 2018, and raised two counterclaims, respectively for
contributory negligence and common law indemnity, against Ms.
Ferris.

Ms. Ferris filed an answer to the counterclaims on

11

September 19, 2018, together with a motion to dismiss them for failure to state a claim.  I denied Ms. Ferris's motion to dismiss the counterclaims on October 2, 2018.

Thereafter, ACCNYC filed its own motion to dismiss for lack of jurisdiction or, in the alternative, for transfer of the case to the United States District Court for the Southern District of New York.

Ms. Ferris responded with her motion to amend her complaint again.  In her second amended complaint ("SAC"), Ms. Ferris does not raise additional claims against Defendants, but substantially supplements the factual allegations based on information learned through the course of discovery.

I held a status conference on March 13, 2019 to discuss the outstanding motions.  In its wake, Pound Hounds and Ms. Darrell filed a motion to dismiss the SAC one week later.  Ms. Ferris has made no further effort to develop her complaint.

In April 2019, Ms. Ferris began to pursue another avenue of motion practice when she filed a motion for partial summary judgment on Count I (violation of the Massachusetts dog bite statute) against Pound Hounds and Ms. Darrell.

Pound Hounds and Ms. Darrel, in their opposition to that motion, incorporated a cross-motion for summary judgment as to Count I of Ms. Ferris's complaint, and as to their own counterclaims.

Ms. Ferris and her counsel have at all points resisted severance of the claims against the several defendants and have offered no alternative, apart from continuing in this court, to the Southern District of New York for the maintenance of this litigation in its entirety in a single federal judicial district.  The judicial district they demand – the District of Massachusetts – as will appear, is not available to provide a forum in a case such as this, in which Massachusetts jurisdiction is properly contested by at least one Defendant. Thus, the only alternative to dismissal is transfer of the case to the Southern District of New York, where there is jurisdiction over all parties, since Ms. Ferris is intent on continuing to pursue the litigation jointly against all Defendants.

## II. ANALYSIS

ACCNYC seeks to dismiss the complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure, for lack of personal jurisdiction or, in the alternative, for transfer of the case to the United States District Court for the Southern District of New York.

### A.    *Method for Deciding Motion to Dismiss for Lack of Personal Jurisdiction*

In order to adjudicate a case properly, a court must have, in addition to subject matter jurisdiction, personal

jurisdiction over the parties, "that is, the power to require the parties to obey its decrees," *United States* v. *Swiss Am. Bank, Ltd.*, 191 F.3d 30, 35 (1st Cir. 1999). A plaintiff bears the burden of demonstrating that the court has personal jurisdiction over each of the defendants. *Daynard* v. *Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002).

When adjudicating a motion to dismiss for lack of personal jurisdiction, a court "may choose from among several methods for determining whether the plaintiff has met [its] burden." *Daynard*, 290 F.3d at 50-51 (citations omitted). The First Circuit has recognized three methods in particular for adjudicating a motion to dismiss for lack of personal jurisdiction, the "least taxing" and "most commonly employed" of which is the *prima facie* standard. *Rodriguez* v. *Fullerton Tires Corp.*, 115 F.3d 81, 83-84 (1st Cir. 1997).

Under the *prima facie* standard, a court must "restrict its inquiry to whether the plaintiff has proffered evidence which, if credited, suffices to support a finding of personal jurisdiction." *Barrett* v. *Lombardi*, 239 F.3d 23, 26 (1st Cir. 2001).[12] The court need not "credit conclusory allegations or

---

[12] The other two methods recognized by the First Circuit are the "preponderance-of-the-evidence standard" and the "likelihood" standard. *Boit* v. *Gar-Tec Products, Inc.*, 967 F. 2d 671 675-78 (1st Cir. 1992). If a court determines that "it is unfair to force an out-of-state defendant to incur the expense and burden

draw farfetched inferences," *Ticketmaster-New York, Inc.* v. *Alioto*, 26 F.3d 201, 203 (1st Cir. 1994), but must credit specific facts supported by competent evidence.  *See Barrett*, 239 F.3d at 26.  In addition, the court should consider all uncontradicted facts advanced by the defendant.  *Massachusetts Sch. of Law at Andover, Inc.* v. *Am. Bar Assoc.,* 142 F.3d 26, 34 (1st Cir. 1998) (internal citation omitted).

I find the *prima facie* standard sufficient here.  *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir., 2001).  ACCNYC apparently acquiesces to the *prima facie* standard because it has not requested an evidentiary hearing, so there is no reason for me to employ either of the more demanding methods for determining personal jurisdiction.

A motion to dismiss for lack of personal jurisdiction must be "decided before trial unless the court orders a deferral until trial."  Fed. R. Civ. P. 12(i); *see generally Boit* v. *Gar-Tec Products, Inc.*, 967 F. 2d 671, 676 (1st Cir. 1992).  A district court's allowance of a motion to dismiss for lack of personal jurisdiction pursuant to the *prima facie* standard before trial is a permissible way to proceed.  *Id.*  If, however, a district court applies the *prima facie* standard and denies the

---

of a trial on the merits in the local forum without first
requiring more of the plaintiff than a *prima facie* showing" of
jurisdiction (for example where the "proffered evidence is
conflicting and the record is rife with contradictions"), one of
the other two methods may be employed.  *Id.* at 676.

motion to dismiss, it "is implicitly, if not explicitly, ordering that hearing and determination of the motion to dismiss be deferred until the trial." *Id.* (internal quotations omitted).

## B.   *Right to a Jury Trial on the Issue of Personal Jurisdiction*

In Ms. Ferris's opposition to ACCNYC's motion to dismiss, she urges that I not dismiss this current action because "[w]hen relying upon the Long Arm Statute, the Plaintiff is entitled to a jury."[13]  Ms. Ferris additionally argues that "[w]hen personal jurisdiction under the long-arm statute depends on establishing elements of the tort claim, plaintiff may, and probably does, have a right to a trial before a jury."[14]

---

[13]  In support of her contention, Ms. Ferris cites to *Workgroup Tech. Corp.* v. *MGM Grand Hotel*, 246 F. Supp. 2d 102 (D. Mass. 2003).  Nowhere does *Workgroup* support the contention or even separately mention the issue of the right to a jury trial for personal jurisdiction issues.  In *Workgroup*, Magistrate Judge Collings applied the *prima facie* standard – and in doing so considered "specific facts affirmatively alleged by the plaintiff as true." *Id.* at 108.  He found that the defendant's conduct constituted transacting business in Massachusetts, thus satisfying Massachusetts' long-arm statute. *Id.* at 109. *Workgroup* did not, however, deny the defendant's motion to dismiss because personal jurisdiction issues needed to be heard before a jury.

[14]  Ms. Ferris additionally cites two opinions issued by Judge Keeton over the years. *N. Am. Video Corp.* v. *Leon*, 480 F. Supp. 213, 216 (D. Mass. 1979) and *Am. Home Assurance Co.* v. *Sport Maska, Inc.*, 808 F. Supp. 67, 77 (D. Mass. 1992).  Neither case supports her contention regarding the necessity for a jury trial before a motion to dismiss may be granted.  In *Leon*, Judge Keeton made explicit his view that the determination of personal jurisdiction at trial occurs "after finding a *prima facie* showing of jurisdiction" — therefore after the defendant's motion to dismiss has already been denied.  480 F. Supp. at 216.

Ms. Ferris wholly misconstrues the law in this regard.  To be sure, a motion to dismiss for lack of personal jurisdiction should be decided before trial, unless a court decides to defer the adjudication of the personal jurisdiction issue until trial itself.  FED. R. CIV. P. 12(i).  The mere fact a court *may* deny a motion to dismiss and leave the issue of personal jurisdiction until trial, does not mean that the plaintiff has the *right* to present the personal jurisdiction issues to a jury in some sort of pre-trial proceeding.  Ms. Ferris's argument that she is entitled to a jury trial on the issue of personal jurisdiction before the trial on the merits, where it may properly — and would ordinarily in this procedural posture — be contested, is misplaced.

### C.    *Whether This Court Has Personal Jurisdiction over ACCNYC*

There are two routes to establish personal jurisdiction: the general jurisdiction avenue and the specific jurisdiction avenue.  *Foster-Miller, Inc.* v. *Babcock & Wilcox Can.*, 46 F.3d 138, 144 (1st Cir. 1995).  "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state."  *United Elec., Radio & Mach. Workers of Am.* v.

---

In denying the defendant's motion to dismiss in *Sport Maska*, Judge Keeton applied the *prima facie* standard but did "not decide any fact question."  808 F. Supp. at 77.

*163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992)
(citation omitted).  It is uncontested that ACCNYC is a not-for-
profit corporation incorporated in New York where it has its
principal place of business and is exclusively licensed to
operate.  There is no basis to conclude its contacts with
Massachusetts are "so continuous and systematic as to render
[it] essentially at home in [Massachusetts]."  Consequently,
this court does not have general jurisdiction over ACCNYC.
*Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 564 U.S. 915,
919 (2011).

Turning to whether this court nevertheless has specific
jurisdiction, I find a similar lack of basis to support that
contention.  Recognizing I may assert specific jurisdiction over
ACCNYC if permissible under both the Massachusetts long-arm
statute and the Due Process Clause of the United States
Constitution, *Carreras* v. *PMG Collins, LLC,* 660 F.3d 549, 552
(1st Cir. 2011), I take up each branch of the inquiry in turn.

1.   The Massachusetts Long-Arm Statute

The Massachusetts long-arm statute in pertinent part allows
a court of the Commonwealth to

exercise personal jurisdiction over a person, who acts
directly or by an agent, as to a cause of action in
law or equity arising from the person's

(a)  transacting any business in this commonwealth;
(b)  contracting to supply services or things in this
     commonwealth;
(c)  causing tortious injury by an act or omission in

this commonwealth;

(d)  causing tortious injury in this commonwealth by
     an act or omission outside this commonwealth if
     he regularly does or solicits business, or
     engages in any other persistent course of
     conduct, or derives substantial revenue from
     goods used or consumed or services rendered, in
     this commonwealth;

MASS. GEN. LAWS c. 223A, § 3.

As to subsections (a) and (b), ACCNYC did not itself
transact any business or make any contracts connected to
Massachusetts.  The only agreement involving ACCNYC was the
agreement it entered into for Pound Hounds to adopt Brock.
Pound Hounds and ACCNYC completed the adoption transaction in
New York and the agreement is explicitly governed by the laws of
New York.

Regarding subsections (c) and (d), Ms. Ferris fails to make
any allegations related to causation by ACCNYC.  Assuming,
*arguendo*, as to subsection (c), that a tort occurred in
Massachusetts, she has not provided factual assertions regarding
causation by ACCNYC beyond the contention that Brock was the dog
that bit her daughter, and that he was once under ACCNYC's
custody and control before Pound Hounds adopted him.  As to
subsection (d), specifically, I further note that nowhere in the
record is there a suggestion that ACCNYC regularly "engages in
[any] persistent course of conduct" in Massachusetts.  The
absence of support for such a contention is the principal basis
for my finding that I lack general jurisdiction over ACCNYC.

Ms. Ferris makes no attempt to allege facts establishing any conduct by ACCNYC in Massachusetts, let alone conduct that *caused* a tort. *See generally LaForest* v. *Ameriquest Mortg. Co.*, 383 F. Supp. 2d 278, 285 (D. Mass. 2005) (no jurisdiction under section 3(c) of Massachusetts' long arm statute where defendant is an out of state defendant who does not visit or solicit business in Massachusetts); *Roberts* v. *Legendary Marine Sales*, 857 N.E.2d 1089, 1092 (Mass. 2006) (no jurisdiction under section 3(d) of long arm statute in "absence of any specific showing that the [defendants] web site did anything beyond providing information," and there was no "persistent course of conduct" by the defendant in Massachusetts).  Ms. Ferris has failed to show how subsections (c) and (d) of the long-arm statute apply to ACCNYC.

As a result, the only conceivable way for jurisdiction over ACCNYC to be proper under the Massachusetts long-arm statute is if, as alleged by Ms. Ferris, Pound Hounds was ACCNYC's agent and Pound Hounds itself is subject to the Massachusetts long arm-statute. *See* Mass. Gen. Laws c. 223A § 3(a).  For this part of the analysis I will assume, *arguendo*,[15] that Pound Hounds is subject to the Massachusetts long-arm statute in order to

---

[15] As observed, *supra,* Pound Hounds and Ms. Darrell also have filed a motion to dismiss for lack of jurisdiction, [Dkt. No. 32], but I do not resolve that motion on the merits for present purposes.

address whether Pound Hounds was ACCNYC's agent and therefore
its contacts can be imputed to ACCNYC.

Under New York law,[16] to create an agency relationship, "the
agent must consent to act subject to the principal's direction
and control, and the principal must consent to exercising
control over the agent." *Old Republic Ins. Co.,* v. *Hansa World
Cargo Service, Inc.*, 51 F. Supp. 2d 457, 471 (S.D.N.Y. 1999).
Control is the key element. *Abbate* v. *Abbate*, 82 A.D.2d 368,
382 (N.Y. App. Div. 1981). Control cannot be shown "upon
conclusory allegations that the defendant controls the
corporation." *Karabu Corp.* v. *Gitner*, 16 F. Supp. 2d 319, 324
(S.D.N.Y. 1998) (citations omitted). Rather, the "plaintiff's
allegations must sufficiently detail the defendant's conduct" to
support a *prima facie* showing establishing control. *Id.*

However, direct manifestations from the principal to the
agent are not required to form an agency relationship. *Old
Republic*, 51 F. Supp. 2d at 472. Even where there is no actual
authority, an agent may bind the principal where "the words or

---

[16] New York law is appropriate to govern the question of whether
Pound Hounds was an agent of ACCNYC. See *Lambert* v. *Kysar*, 983
F.2d 1110, 1118 (1st Cir. 1993) (Massachusetts "courts routinely
enforce choice-of-law provisions unless the law chosen violates
established public policy or bears no reasonable relationship to
the contractual transaction between the parties."). Both Pound
Hounds and ACCNYC are based in New York. The only written
agreement between Pound Hounds and ACCNYC before me is the
Adoption Agreement which is "governed by the laws of the State
of New York." [Adoption Agreement, filed as Exh. A to SAC, at
Bullet Point 6].

conduct of the principal, communicated to a third party, . . .
give rise to the appearance and belief that the agent possesses
authority . . . " *Id.* at 475 (citation and internal quotation
marks omitted).  Under such circumstances, it is essential to
show that "the third person, accepting the appearance of
authority as true, has relied upon it" to reach the principal
liable based on conduct by the apparent agent.  *Greene* v.
*Hellman*, 51 N.Y.2d 197, 204 (N.Y. 1980).

Ms. Ferris has not alleged any facts in support of an
actual or apparent agency relationship between Pound Hounds and
ACCNYC.  With respect to actual authority, Ms. Ferris has made
no allegation that ACCNYC exercised control over Pound Hounds or
that both parties consented to it.  In her SAC, Ms. Ferris fails
to allege a single fact relating to any formal relationship or
interaction between ACCNYC and Pound Hounds beyond Brock's
Adoption Agreement.[17]  Additionally, the mere fact that Pound

---

[17] I note, in this connection, ACCNYC's uncontradicted affidavit
supporting the conclusion that Pound Hounds was not acting as
ACCNYC's agent.  *See* Affidavit of Jennifer Piibe, filed as
Exhibit C to ACCNYC's Memorandum in support of its motion to
dismiss or transfer, [Dkt. No. 23-3 at ¶ 4].  ("There is no
financial support for the animal from ACCNYC after it is adopted
by the entity.  There is no control over who the dog is brought
to for treatment and care.  There is no control over who the
foster agency places the dog with after it is adopted.  In fact,
as a part of the program, if the adopting entity subsequently
places the animal with a family as part of a foster arrangement
made by the adopting entity, that entities' [sic] foster family
is not able to contact ACCNYC with regard to the animal.  Such
communication must be made through the adopting entity.").

Hounds was listed on ACCNYC's website as a "New Hope Partner" does not justify a conclusion that Pound Hounds was an agent of ACCNYC.  Ms. Ferris only alleges that the partnership "allows [Pound Hounds] to pull dogs owned and/or in the possession of [ACCNYC] for foster placement," but makes no claim that ACCNYC exercised control over Pound Hounds.[18]

In addition to the lack of showing of an actual agency relationship on the facts alleged, it is clear that ACCNYC did not hold Pound Hounds out as its apparent agent in such a way that would induce reasonable reliance by Ms. Ferris (or any potential adopter).  In fact, as conceded in Ms. Ferris's first motion to amend her complaint, Ms. Ferris did not know about ACCNYC until after she initiated the current lawsuit. Necessarily, Ms. Ferris could not have believed that Pound Hounds was acting as ACCNYC's agent.

Because the SAC does not allege sufficient facts to support the contention that Pound Hounds was ACCNYC's agent, I do not need to assess whether Pound Hounds is bound by the long-arm statute for the purposes of ACCNYC's motion to dismiss.

---

[18] Additionally, I reject the argument that this made Pound Hounds and ACCNYC partners in some broader legal sense.  Ms. Ferris has not alleged that Pound Hounds and ACCNYC shared profits, losses, or management or that there were other relevant indicia of a partnership between the two organizations. *See Brodsky* v. *Stadlen*, 526 N.Y.S.2d 478, 479 (N.Y. App. Div. 1988) (stating the factors to be considered in determining partnership).

<u>2.</u>   <u>The Due Process Clause</u>

Given my conclusion that this court does not have personal jurisdiction over ACCNYC pursuant to the Massachusetts long-arm statute, I need not proceed to determine whether exercising personal jurisdiction over ACCNYC would comport with due process.[19]

**D.   *Transfer of the Entire Case is Appropriate***

Having found that this court lacks personal jurisdiction over ACCNYC, the only remaining issue is whether I can or should transfer, rather than dismiss, the case.  Even though this court does not have jurisdiction to hear and adjudicate the claims against ACCNYC, I may still order the case to be transferred, if

---

[19] As courts applying Massachusetts personal jurisdiction analysis have developed the proper protocol, they have directed that "[b]ecause the long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process, and in order to avoid unnecessary consideration of constitutional questions, a determination under the long-arm statute is to precede consideration of the constitutional question." *SCVNGR, Inc.* v. *Punchh, Inc.*, 85 N.E.3d 50, 52 (Mass. 2017) (remanding to Superior Court to conduct the long-arm statutory analysis). I have observed that "[h]istorically, both the First Circuit and the Supreme Judicial Court have interpreted the Commonwealth's long-arm statute as coextensive with the outer limits of the Constitution. However, recently, both courts have moved away from this interpretation. . ." *TargetSmart Holdings, LLC* v. *GHP Advisors, LLC*, 366 F.Supp.3d 195, 207 (D. Mass. 2019) (emphasis added) (internal quotations and citations omitted); *see also, SCVNGR, Inc.*, 85 N.E.3d at 55-56 ("In contrast to the long-arm statutes of some States, the Massachusetts statute does not purport to extend jurisdiction as far as due process would allow." . . . "The requirements of G.L. c. 223A, § 3, may not be circumvented by restricting the jurisdictional inquiry to due process considerations.").

it could properly have been brought in the putative transferee court, the United States District Court for the Southern District of New York.

Where there is no jurisdiction, if it is in the "interest of justice", a court may transfer the case "to any other such court in which the action . . . could have been brought at the time it was filed or noticed." 28 U.S.C § 1631.[20] I have observed that "[t]he First Circuit has interpreted this provision to establish a presumption in favor of transfer — rather than dismissal — when the forum court lacks personal jurisdiction over one of the defendants." *TargetSmart Holdings, LLC* v. *GHP Advisors, LLC*, 366 F. Supp. 3d 195, 214 (D. Mass. 2019) (citations omitted). The presumption, however, can be rebutted if a transfer is not "in the interest of justice." *Britell* v. *United States*, 318 F.3d 70, 74 (1st Cir. 2003).

As to subject matter jurisdiction, the United States District Court for the Southern District of New York has

---

[20] I note that ACCNYC, as an alternative to dismissal, sought transfer of this case under 28 U.S.C. § 1404(a). Section 1404(a) permits a federal court "[f]or the convenience of parties and witnesses, in the interest of justice" to transfer a civil action "to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). I interpret 28 U.S.C. § 1404(a) to allow transfer of a case only if the District of Massachusetts has jurisdiction over the case in the first instance. *TargetSmart* 366 F. Supp. 3d at 217. Because I conclude this court lacks personal jurisdiction over ACCNYC, transfer under § 1404(a) is not available. As a result, I look to 28 U.S.C § 1631.

diversity jurisdiction over all the claims.  Additionally, given

that Ms. Darrell is a resident of New York County, and both

ACCNYC and Pound Hounds have their principal places of business

in New York County, the Southern District of New York also has

personal jurisdiction (by way of general jurisdiction) over all

defendants in this suit.  *See Goodyear*, 564 U.S. at 919.

Based on the record before me, there is no indication that

dismissal would be in the interests of justice.  To the

contrary, although Ms. Ferris and her attorneys appear oblivious

to the danger their adamant and unshaken position that only the

District of Massachusetts should be the venue for the action,

dismissal would raise the potential for a dispositive statute of

limitations defense against new complaints.  In any event,

irrespective of whether Plaintiff's strategy is in her own long

term interests, a transfer to the Southern District of New York

would serve the interests of justice by allowing the claims to

move forward through a single proceeding in a venue with proper

jurisdiction over all defendants.  Moreover, in light of the

substantial, if incomplete, fact discovery that has been

undertaken to date, even assuming a statute of limitations

defense would not be successful, dismissal at this stage

(thereby forcing the parties to start *ab initio* as to the

dismissed party), would not advance my obligation and the

obligation of the federal courts generally to ensure a "just,

speedy, and inexpensive determination" of the action. FED. R. CIV. P. 1.

Finding nothing on the record to rebut the presumption in favor of transfer,[21] and because I find that the Southern District of New York has both subject matter and personal jurisdiction over the pending matter and all Defendants, I will transfer, rather than dismiss, the case to the Southern District of New York pursuant to my authority under 28 U.S.C. § 1631.

### III. CONCLUSION

As a threshold matter, I GRANT Plaintiff's motion to amend her complaint again [Dkt No. 25] and decide the remaining motions in light of the uncontested facts found in the record to date. I conclude, on a *prima* facie basis, that this Court does not have personal jurisdiction over ACCNYC. In the interest of justice, under 28 U.S.C. § 1631 I GRANT ACCNYC's motion [Dkt. No. 22] to dismiss or transfer to the extent of directing the Clerk to transfer the entire case to the United States District Court for the Southern District of New York for adjudication.

The motion [Dkt. No. 32] of Pound Hounds and Ms. Darrell to dismiss for lack of personal jurisdiction is rendered MOOT,

---

[21] I note that one welcome consequence of the adaption of the courts to the challenges of the current pandemic is an increased willingness and competence in conducting virtual hearings. Thus, the difficulties attendant upon inconvenient pre-trial travel outside of Massachusetts can be minimized.

based on my decision to transfer the case.  I similarly find to be MOOT in this Court, given the transfer, the cross-motions for partial summary judgment on Count 1 of the second amended complaint [Dkt Nos. 39 and 47].  Structuring further dispositive motion practice should be left to the transferee judge.

In light of the transfer, I also treat as MOOT and decline to address the other pending motions related to discovery and case-scheduling status [Dkt Nos. 37, 50, 59, and 71] which, to the degree they are to be reasserted, should be addressed by the United States District Court for the Southern District of New York which is — unlike this court — authorized to exercise jurisdiction over all parties in this litigation.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE